# CHARMOLL FASHIONS, INC. v.
# LORRAINE OTTO AND OTHERS.

248 N. W. 2d 717.

December 3, 1976—No. 45876.

*Altman, Geraghty, Mulally & Weiss* and *Robert Mahoney,* for appellant.

*Rietz, Rietz & Rietz* and *Larry J. Rietz,* for respondents Otto.
*Perry Scheftel,* for respondent Knelman.

Heard before Peterson, MacLaughlin, and Scott, JJ., and considered and decided by the court en banc.

KELLY, JUSTICE.

Appellant, Charmoll Fashions, Inc., commenced an action to recover on a promissory note against Lorraine Otto, Delos O. Otto, Edward Knelman, and Varsi-Jac, Inc. The case was tried on stipulated facts and the trial court concluded that the indi-

vidual defendants were comakers, and not guarantors, of the note. Therefore, because the note called for 10-percent interest, it was held usurious and hence unenforceable as to these defendants. Appellant appeals from the entry of judgment and from denial of its motion for a new trial. We reverse.

Appellant and defendant Lorraine Otto were at one time business partners. Otto, apparently in association with appellant, established an incorporated business known as Varsi-Jac, Inc. Shortly thereafter the new corporation purchased certain equipment and stock from appellant, and the following promissory note was executed:

"FOR VALUABLE CONSIDERATION RECEIVED, the undersigned, a Minnesota corporation, hereby promises to pay to the order of CHARMOLL FASHIONS, INC., a Minnesota corporation, the sum of $63,690.99, plus interest on the unpaid principal amount thereof from time to time at the rate of ten per cent (10%) per annum from the date hereof until paid.

\* \* \* \* \*

"If any of the following events shall occur, the holder hereof may declare the unpaid principal and accrued interest on this note immediately due and payable:

\* \* \* \* \*

"(d)　Lorraine Otto's incapacity for a period of more than sixty (60) days from actively conducting her business and affairs.

"(e)　Lorraine Otto's death.

\* \* \* \* \*

"The maker and guarantor of this note does hereby waive presentation of payment, notice of nonpayment, protest and notice of protest and does hereby agree to all extensions and renewals of this note without notice.

"This note is secured by a Security Agreement of even date covering certain equipment and inventory owned by the maker hereof.

"Signed and sealed this first day of January, 1971.

"VARSI JAC, INC.

By /s/ Lorraine Otto

Lorraine Otto-President

/s/ Edward Knelman

Edward Knelman-Treasurer

"FOR VALUE RECEIVED, the undersigned do hereby jointly and severally guarantee the payment of the within note according to all of its terms and conditions hereby waiving any and all demand for payment, notice of default or nonpayment, protest and notice of protest. This guarantee shall continue until the full amount of said note and accrued interest thereon is paid in full. The undersigned shall jointly and severally be bound upon this guarantee to the holder hereof as if the obligation of the maker hereof were the primary obligation of the undersigned and the holder hereof shall not be required to proceed against the maker hereof prior to proceeding to collect under this guarantee, but may proceed directly against the undersigned or any of them. The undersigned and each of them without affecting liability hereunder in any respect consent to and waive notice of all change of terms, the extension of time to pay, release of the whole or any part of the principal and accrued interest on the within note, the settlement or compromise of differences, and the acceptance or release of security.

"/s/ Lorraine Otto

Lorraine Otto

/s/ Edward Knelman

Edward Knelman

/s/ Delos O. Otto

Delos O. Otto"

On November 15, 1972, after making payments totaling $15,000, Varsi-Jac, Inc., defaulted on the note and appellant brought this action to enforce the note against Varsi-Jac, Inc.,

as maker and the individual defendants as guarantors. The trial court found that the individuals were comakers and not guarantors and that the note was usurious and hence unenforceable as to them.

Minnesota's usury law prohibits lenders from charging more than 8-percent simple interest on loans to individuals. Minn. St. 334.01. However, corporations may not interpose the defense of usury in any action. Minn. St. 334.021. Similarly, individuals who guarantee a corporate debt may not interpose the defense. Dahmes v. Industrial Credit Co. 261 Minn. 26, 110 N. W. 2d 484 (1961); see, generally, Annotation, 63 A. L. R. 2d 924, 950. The reason individual guarantors of corporate debt may not raise the defense of usury is simply that—

"* * * if an excessive interest rate does not render the principal obligation illegal, it should likewise not affect the undertaking of the guarantor which is to assure performance of the principal obligation." Dahmes v. Industrial Credit Co. 261 Minn. 26, 31, 110 N. W. 2d 484, 488 (1961).

However, where the individuals' liability for the corporate debt is direct and primary, such as that of the comaker of a note, the defense of usury may be invoked by the individual. Dahmes v. Industrial Credit Co. *supra.* Thus, the dispositive issue in the instant case is whether respondents were guarantors or comakers of the note.

In Schmidt v. McKenzie, 215 Minn. 1, 6, 9 N. W. 2d 1, 3 (1943), we defined a guaranty as—

"* * * 'a collateral contract to answer for the payment of a debt or the performance of a duty in case of the default of another who is primarily liable to pay or perform the same.' 3 Dunnell, Dig. & Supp. § 4068."

We reiterated the rule in Clark v. Otto B. Ashbach & Sons, Inc. 241 Minn. 267, 275, 64 N. W. 2d 517, 522 (1954), when we described a contract of guaranty as—

"* * * an undertaking or promise on the part of one person which is collateral to a primary or principal obligation on the part of another and which binds the obligor to performance in the event of nonperformance by such other, the latter being bound to perform primarily."

Also, in Clark we quoted with approval from 24 Am. Jur., Guaranty, § 4:

"The debtor is not a party to the guaranty, and the guarantor is not a party to the principal obligation. The undertaking of the former is independent of the promise of the latter; and the responsibilities which are imposed by the contract of guaranty differ from those which are created by the contract to which the guaranty is collateral."

Under the terms of the agreement, the corporation, Varsi-Jac, Inc., "promises to pay to the order of" appellant a sum plus 10-percent interest. Upon the death or incapacity of Lorraine Otto, president of Varsi-Jac, Inc., the holder of the note may declare the obligation immediately due and payable. In a separate clause, which is preceded by the signatures of officers of Varsi-Jac, Inc., on the note itself, the agreement further provides that certain individuals "do hereby jointly and severally *guarantee* the payment of the within note according to all its terms and conditions." (Italics supplied.) Among the individuals subscribing separately to this separate clause were two officers of Varsi-Jac, Inc., who had signed for the corporation under the promise-to-pay clause. Ordinarily, the clear delineation of promise-to-pay and guaranty clauses would leave no doubt as to the capacity in which a particular individual signed a particular clause. Respondents, however, argue that other language in the note compels a conclusion that the alleged guarantors really signed as comakers. After careful consideration of the clauses in question, we must disagree.

Respondents first point to language in the guaranty clause under which the subscribers "shall jointly and severally be bound

upon this guarantee to the holder hereof as if the obligation of the maker hereof were the primary obligation of the undersigned * * *." However, the clause further states that "* * * the holder hereof shall not be required to proceed against the maker hereof prior to proceeding to collect under this guarantee, but may proceed directly against the undersigned or any of them." Respondents suggest that the word "primary" in this clause should be given its strictest legal meaning, i. e., "primary" refers to an obligation not contingent on default by another party. If this meaning is used, it follows that the subscribers were actually agreeing to be bound on the note itself without the necessity of any default by Varsi-Jac, Inc. Under such circumstances, the subscribers would in fact be comakers regardless of the guaranty language in the clause.

We do not think that the language of the note supports the meaning of primary suggested by respondents. First, the sentence quoted emphasized that the obligation of the undersigned is only *upon* and *under* the guaranty, and the second half of that sentence makes it clear in what sense liability is primary, i. e., in the sense that the holder may sue the guarantor on default without first suing the maker. The purpose of such a sentence is to render the guaranty absolute as opposed to conditional in order that the holder may proceed directly against the guarantor without complying with the difficult, costly, and cumbersome common-law requirements of notice, demand, and suit against the maker, etc. which apply to conditional guaranties. See, Plano Mfg. Co. v. Klatt, 87 Minn. 27, 91 N. W. 22 (1902); cases cited in 8A Dunnell, Dig. (3 ed.) § 4090 to 4092. The effect of the provision is to allow the holder to sue the guarantor upon default of the maker without the necessity of an often fruitless action against an insolvent corporate maker. It does not have the effect, as the respondents would seem to suggest, of allowing the holder to demand payment from the guarantor *in the absence of default*. Under the language of this note, respondents agreed only to "guarantee the payment of" the note under all its terms and

conditions, until it had been paid; the corporation promised to "pay" the note. Therefore, the corporation remains primarily liable as a maker to pay the note and, on default, the guarantors become liable.

This reading of the note is supported by the leading case of Dahmes v. Industrial Credit Co. 261 Minn. 26, 110 N. W. 2d 484 (1961). In Dahmes, plaintiffs argued that their obligation was not a guaranty because the relevant document provided: "The undersigned agree * * * that their liability hereunder is direct and unconditional and may be enforced without requiring LENDER first to resort to any other right, remedy or security; * * *." (Italics omitted.) 261 Minn. 30, 110 N. W. 2d 487. This court rejected any suggestion that the "direct and unconditional" language rendered plaintiffs' obligation primary:

"Plaintiffs, however, point out that by the terms of the September 9, 1957, agreement their liability was made 'direct and unconditional' and enforceable without requiring the defendant 'first to resort to any other right, remedy or security.' They argue that because their undertaking was a primary and unconditional promise, the contract was not in fact one of 'guaranty' despite the use of that term.

"It is correct, as plaintiffs contend, that the nature of their liability should properly be gathered from the September 9, 1957, agreement since the loans which gave rise to the foreclosure proceedings here involved were made subsequent to that date. It is also true that the mere designation of a document as a 'guaranty' does not conclusively establish it as such. In our opinion, however, the quoted language of the agreement does not alter the plaintiffs' status as guarantors. A contract of guaranty may be either conditional or absolute. If the guaranty is absolute, the obligor becomes liable merely upon the failure of performance by the debtor. A conditional guarantor, on the other hand, is liable only upon the happening of the stated contingency, such as, for example, suit against the principal debtor, exhaustion of secu-

rity, or the like. In the absence of language clearly indicating that the guaranty is conditional, it is usually treated as absolute.

"The language of the September 9 agreement relied upon by the plaintiffs does nothing more than spell out the fact that the guaranty is absolute rather than conditional and is perfectly consistent with the defendant's contention that a guaranty was involved. There is no language in either the notes or the 'guaranty' indicating that the plaintiffs' obligation was intended to be an original and separate undertaking made without reference to performance by a principal debtor. To the contrary, the September 9 agreement repeatedly refers to the principal corporate debtor, called the 'BORROWER,' and the liability of the plaintiffs is clearly predicated upon the failure of the 'BORROWER' to perform. The notes, as we have pointed out, specifically make the plaintiffs' promise a collateral one.

"The plaintiffs cite numerous authorities to the effect that the defense of usury is available to an individual who is the primary obligor but not to an individual who is secondarily liable on the corporate debt. The difficulty arises from the failure to ascribe appropriate definitions to the terms 'primary' and 'secondary.' *The plaintiffs here are secondarily liable in the sense that their liability is predicated on the failure of the principal obligor to perform. They are primarily liable in the sense that their guaranty was absolute rather than conditional. The rationale of the rule precluding guarantors from asserting the defense of usury, when it is not available to the principal debtor, relates to the character of the obligation rather than the means of enforcing it, and applies with equal force to both types of guarantees.* The true and correct issue and question involved is whether the plaintiffs' promise is an original undertaking or a collateral one. Although the defendant here could proceed directly against the plaintiffs, the plaintiffs' liability was, nevertheless, dependent upon the failure of the corporation to perform and hence was a collateral undertaking in which the defense of usury, not being available to the principal obligor, was similarly not

available to the plaintiffs." (Italics supplied.) 261 Minn. 33, 110 N. W. 2d 488.

In our view, respondents also confuse the term "primary" in the manner described by the last paragraph just quoted. In the context of this note, use of the term primary makes the guaranty absolute. It does not alter the fact that the corporation, which is primarily liable in that it must pay the note, must default before respondents, who are secondarily liable, become liable on the obligation.

Respondents also rely on an acceleration clause in the note which provides that the note becomes payable upon Lorraine Otto's death, or in the event of her incapacity for more than 60 days. Such reliance is obviously misplaced. This clause reveals no more than that the holder may deem himself insecure if Lorraine Otto dies or if she is otherwise prevented from actively conducting her business and affairs. The logical inference to be drawn is that Lorraine Otto plays a key role in the business of Varsi-Jac, Inc., not that the loan represented by the note was made to her individually or that she was the comaker of the note. Furthermore, even if the respondents' inference were a logical one, it does not apply to Edward Knelman and Delos Otto, who were not the subject of the provision.

Our reading of the entire note convinces us that the individual respondents were intended to be guarantors of a corporate loan. There is no evidence that plaintiff-holder was attempting to disguise an individual loan as a corporate transaction in order to avoid our usury law.[1] There is therefore no reason not to apply

---

[1] There might be some ground to enforce the usury law against plaintiff if it were apparent from the record that the guaranty clause was a sham and that the loan was made for the individual purposes of the guarantors. Compare Raby v. Commercial Banking Corp. 208 Pa. Super. 52, 220 A. 2d 659 (1966), with Walnut Discount Co. v. Weiss, 205 Pa. Super. 161, 208 A. 2d 26 (1965). See, also, All Purpose Finance Corp. v. D'Andrea, 427 Pa. 341, 235 A. 2d 808 (1967); Verson v. Hardt, 107 Ill. App. 2d 480, 246 N. E. 2d 461 (1969). See, generally, Annotation, 63 A. L. R. 2d 924.

our law and policy forbidding the interposition of a usury defense.

There is some suggestion in the record that appellant, Charmoll Fashions, Inc., engaged in activities that amounted to assertion of rights not supported by the terms of the note; i. e., appellant insisted that it would hold Lorraine Otto liable on the full note if she were to sell Varsi-Jac, Inc., to a certain interested buyer. There is nothing in the language of the note that justifies such a position. We express no opinion as to any claim respondents may have for tortious interference with their business by the activities of appellant. We hold only that such activities do not change our usury law or the language in the note reflecting a corporate loan with individual, secondarily liable, guarantors.

For the reasons stated above, the judgment of the district court is reversed and the case is remanded with instructions to enter judgment in accordance with the views expressed herein.

Reversed and remanded.