## 69013. EAVES v. J. C. BRADFORD & COMPANY, INC.
### (326 SE2d 830)

BIRDSONG, Presiding Judge.

Robert Eaves, plaintiff below, entered into a customer's agreement with J. C. Bradford & Co., a stock brokerage firm, which allowed Bradford to sell stock from Eaves' "margin account" if the value of Eaves' equity in the account fell below a certain percentage. On several occasions during 1981 and 1982, Bradford either called, wrote or sent Eaves a telegram informing him that the margin requirement in his account was below the agreed upon level and Eaves would transfer money from another account to bring his equity above the minimum level.

On October 4, 1982, Bradford sent Eaves a telegram informing him of a deficiency in his margin account and that he needed to deposit $949 to reach the minimum equity level. Eaves stated that he received the October 4 telegram on October 6 and since it gave him until October 5 to meet the call and he had not received a telephone call from the broker that he did nothing about the notice. In the past, he had received a notice to meet a "maintenance call" to raise the margin level and the stock market had risen to a higher level without him having to make the added deposit. However, Eaves also stated on cross-examination that he kept abreast of the market and was aware that during this period the market was in a steadily declining position. The notification to Eaves was a "maintenance call" which was due immediately. Normally Bradford required a response within two days but on this occasion Bradford gave Eaves four days before taking any action. Within the four days, the deficiency in Eaves' account had increased from $949 to $4,400 and a sufficient amount of stock was sold to bring Eaves' account up to the required level. Eaves maintained a second account with Bradford but, on the date of sale of the stock, the second account was also below the minimum value level and had a maintenance call against it for $85.

Subsequent to the sale of Eaves' stock, its value increased and he brought this action, alleging conversion and fraud by Bradford's sale of the stock and seeking actual and punitive damages, as well as attorney fees. He appeals from a jury verdict and judgment for the defendant. *Held*:

Eaves enumerates but one error. He contends that the charge "that a quasi new contract required a 'meeting of the minds'" was incorrect. Plaintiff relies upon OCGA § 13-4-4. However, Eaves had been dealing with Bradford since 1975, and the act which gave rise to this action occurred in October 1982. The Official Code of Georgia Annotated did not take effect until November 1, 1982. OCGA § 1-1-9. Hence, Code Ann. § 20-116 applies: "Where parties, in the course of the execution of a contract, depart from its terms and pay or receive

money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given the other of intention to rely on the exact terms of the agreement. *Until such notice, the departure is a quasi new agreement."* (Emphasis supplied.) In the instant case, Eaves argues that he had always received a telephone call from Bradford regarding the action ·he should take — except in this instance.

Plaintiff's position is that "a quasi new contract arises out of the course of dealings between the parties as evidenced by their conduct and the formal, contractual assent inherent in a 'meeting of the minds' is not required."

Generally speaking, there are two types of implied contracts, those "implied in fact" and those "implied in law." 6 EGL 92, Contracts, § 41. Those contracts "implied in fact" are true contracts, and those "implied in law" are called "quasi contracts." Id. "Quasi" contracts, in general, are implied by law without regard for the intent or assent of the parties. 1 Corbin on Contracts 276, § 561; *Butts County v. Jackson Banking Co.*, 129 Ga. 801, 808 (60 SE 149). However, our statutory and decisional law has placed a gloss on "quasi" contracts as it applies to a variance from the terms of a written contract.

The statute itself declares such a "departure is a quasi new agreement." Code Ann. § 20-116. And, in the interpretation of this statute, the Supreme Court has held that "where parties, in the course of the performance of a contract, depart from its terms and pay or receive money under such departure, a modification by way of *a quasi new agreement* will be implied, still, in order for this rule to have application, it is necessary that the circumstances be such as will in law imply *a mutual new agreement*, so that the modification, when taken in connection with the original contract, will provide a new and distinct agreement complete in its terms." (Emphasis supplied.) *Morrison v. Roberts*, 195 Ga. 45 (2) (23 SE2d 164). An "agreement" is defined by Black as "the coming together in accord of two minds on a given proposition; in law a concord of understanding and intention between two or more parties . . . ." Black's Law Dictionary (4th ed.), p. 89.

"In order to create such a quasi new agreement, the parties to the original agreement must mutually consent to the departure." *Crawford v. First Nat. Bank of Rome*, 137 Ga. App. 294, 295 (223 SE2d 488); accord *Selman v. Manis*, 100 Ga. App. 422, 430 (111 SE2d 747). " 'Though a quasi new agreement arises where the parties mutually depart from the terms of the original agreement . . . there must be more than a simple breach on the part of one of the parties; there must be a mutual departure' . . . . For Code Ann. § 20-116 to apply, 'the circumstances [must] be such as will in law imply a mutual new agreement.' " *Vaughn & Co. v. Saul*, 143 Ga. App. 74, 83 (237 SE2d

622). The Supreme Court agrees that "[w]hile parties to a contract may, by a course of dealing after a contract has gone into effect, waive a stipulation therein, still, in order to bring about this result, it must appear from the circumstances that it was *the mutual intention of the parties* to so change the contract." (Emphasis supplied.) *Bearden Mercantile Co. v. Madison Oil Co.*, 128 Ga. 695 (4) (58 SE 200). "Mutual disregard of an executory contract, so as to change a provision . . . is *not accomplished by the intention of only one of the parties* thereof to treat the stipulation as no longer binding, *without the concurrence of the other party.*" (Emphasis supplied.) *Southern Feed Stores v. Sanders*, 193 Ga. 884 (3) (20 SE2d 413). Such a showing may be implied from the parties' conduct. *Shalom Farms v. Columbus Bank &c. Co.*, 169 Ga. App. 145, 147 (312 SE2d 138). "If only one party disregards the contract's terms but the other party has not concurred in such changes, then the non-concurring party is entitled to rely on the exact terms, [cit.], and there is no quasi new agreement as a matter of law.

"To establish the existence of a quasi new agreement would require of appellant a showing of mutual rather than merely unilateral intention to vary the terms of the original contract." Id.; accord *Jones v. Lawman*, 56 Ga. App. 764, 771 (194 SE 416). Such departure from the original terms "must be mutual between the parties and intended, and must be such as, in law, to make practically a new agreement as to the stipulations contained in the original contract [cit.], yet, whether there has been such a mutual and intended departure so as to make practically a new agreement is generally a question for a jury to determine." *Continental Cas. Co. v. Union Camp Corp.*, 230 Ga. 8, 11 (195 SE2d 417); accord *Marathon Oil Co. v. Hollis*, 167 Ga. App. 48, 49 (305 SE2d 864).

Accordingly, within the context of the facts in the instant case on variance from the terms of an original contract, in order to create a "quasi new agreement" under Code Ann. § 20-116, the parties must mutually consent to the departure and must mutually agree and intend to adopt the new terms which their conduct has grafted onto the original contract. Hence, it was not error to instruct the jury that "a quasi new contract required a 'meeting of the minds' . . . ."

*Judgment affirmed. Sognier, J., concurs. Carley, J., concurs in the judgment only. Beasley, J., disqualified.*

DECIDED FEBRUARY 13, 1985.

*Randolph A. Mayer*, for appellant.

*Michael J. Warshauer, David S. DeLagus, John C. Gray*, for appellee.