**Marshall JONES, et al., Appellants,**

v.

**Clifton E. NELSON, et al., Respondents.**

**No. C7-88-1065.**

Court of Appeals of Minnesota.

Dec. 13, 1988.

John P. Weber, Weber & Henrichsen, Grand Rapids, for appellants.

T.J. Salmen, Salmen, Brinkman & Martinson, P.A., St. Paul, for respondents.

Considered and decided by PARKER, P.J., and RANDALL, and BOWEN *, JJ. without oral argument.

## OPINION

ROBERT E. BOWEN, Acting Judge.

Marshall and Stella Jones appeal from an order denying their motion for a new trial in this mortgage foreclosure action. The trial court ruled that a mortgage securing payment of a promissory note to the Joneses was void because the underlying loan transaction was usurious. Although the named principal obligor was a corporation, the trial court ruled the corporate loan exception to the usury law was inapplicable because the corporate entity was a sham employed solely to evade the usury laws.

On appeal, the Joneses claim the trial court erred in finding the corporate entity was a sham. Even if this finding is supportable, the Joneses argue, the trial court erred in concluding this purposeful attempt to evade the usury laws rendered inapplicable the corporate loan exception. We reverse and remand for further findings.

## FACTS

Respondent Clifton Nelson, a/k/a Clifford Nelson, is a seasoned entrepreneur, having owned and operated motels, wild rice production facilities and a number of other businesses. He has had extensive dealings in real estate and has borrowed substantial sums from lending institutions on a number of occasions.

---

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. VI, § 2.

In 1975, appellants Marshall and Stella Jones agreed to lend Clifton $45,000 at 15% interest. Clifton, the only witness at trial, testified that the parties discussed the fact that the loan would be usurious were it made to him personally. He said the parties handled the potential usury obstacle by deciding to put the loan in a corporate name to allow the higher rate of interest.

Consequently, the Joneses' attorney drafted a promissory note naming Arrowhead Processing, Inc., a Minnesota corporation, as the principal obligor. Arrowhead Processing had previously been incorporated by Clifton Nelson on January 14, 1974, and he was the sole officer and shareholder. The note, dated January 2, 1975, was executed by Clifton in his capacities as president and secretary of the corporation. The principal amount of the note was $45,000, annual interest was 15%, and the principal balance was due in 10 years if not sooner paid. Clifton and his wife, Lauretta, personally guaranteed payment of the note and gave the Joneses a mortgage on real property they owned.

The loan proceeds were paid directly to Clifton and not to the corporate entity. All monthly payments on the note were made by check signed by Clifton and drawn on the Nelsons' own checking account. The account was in the name of Clifton and Lauretta Nelson, d/b/a Arrowhead Products & Services, one of the several sole proprietorships operated by the Nelsons.

In 1979, the Nelsons agreed to execute a new note designed to replace the old note and to reflect the then correct principal balance of $39,640.76. The Joneses' attorney drafted another promissory note substantially similar to the first. The note was again in the name of Arrowhead Processing, Inc., signed by Clifton as president and secretary, and personally guaranteed by Clifton and Lauretta. The principal obligation was $39,640.76, payable in monthly installments over 10 years with interest accruing at 15% annually. Clifton continued to make monthly payments from a sole proprietorship checking account. He also apparently made some large lump sum payments and substantially reduced the debt.

In 1984, Clifton asked the Joneses to loan him additional sums to bring the debt back up to the 1979 principal balance of $39,640.76. The Joneses agreed and gave Clifton a check for $10,000 and, some time later, another for $10,270.87. These checks were made payable to Clifton, personally, and not to the corporation. In consideration for these further advances, Clifton agreed to pay 16 rather than 15 percent interest.

Clifton continued to make payments of interest only until he and Lauretta filed a joint petition for Chapter 11 bankruptcy in July 1985. Although the Nelsons sporadically made payments from their Chapter 11 debtor-in-possession account, those payments were insufficient to cover even the interest as it accrued. After obtaining a relief from stay from the bankruptcy court, the Joneses commenced this action to foreclose the mortgage securing the debt.

At trial, the Nelsons argued the mortgage was void because the underlying loan transaction, requiring 15 and 16 percent annual interest, was usurious. *See* Minn. Stat. § 334.03 (1974). They also argued that they were entitled to recover all interest payments. *See* Minn.Stat. § 334.02 (1974). The Nelsons thus counterclaimed for $3,181.10, the amount by which their total payments over the term of the loan exceeded the principal obligation. The Joneses conceded the interest rates exceeded that allowed by state usury law, but argued that the usury law was inapplicable because the principal obligation was corporate, thus triggering the corporate loan exception to the usury law, Minn.Stat. § 334.021 (1974).

The trial court determined the loan was usurious and accordingly ruled that the mortgage was void and that the Joneses were entitled to no interest on the debt. The trial court rejected the claim that the corporate loan exception applied, finding that the corporate entity was a sham employed solely to evade the usury law.

Judgment was also ordered on the Nelsons' counterclaim in the amount of $3,181.10. The Joneses' motion for a new trial was denied and this appeal followed.

## ISSUES

1. Did the trial court err in finding the parties' use of the corporate entity was a sham employed to evade the usury law?

2. Did the trial court err in concluding the corporate loan exception to the usury law was inapplicable because the corporate entity was a sham?

## ANALYSIS

The applicable usury statute at the time the original promissory note was executed provided:

> [N]o person shall directly or indirectly take or receive * * * any greater sum, or any greater value, for the loan or forbearance of money, goods, or things in action, than $8 on $100 for one year * * *.

Minn.Stat. § 334.01, subd. 1 (1974). Four elements must be proved to establish a violation of usury laws:

1) a loan of money or forbearance of debt,

2) an agreement between the parties that the principal shall be repayable absolutely,

3) the exaction of a greater amount of interest or profit than is allowed by law, and

4) the presence of an intention to evade the law at the inception of the transaction.

*Citizen's National Bank of Willmar v. Taylor,* 368 N.W.2d 913, 918 (Minn.1985). The trial court's determination as to each element is a finding of fact which will be upheld unless clearly erroneous. *See id.* at 919.

The parties do not dispute that elements one, two and four are established. As to element three, however, the Joneses claim that they did not charge an excessive rate of interest because they lent to a corporation.

Minn.Stat. § 334.021, known as the corporate loan exception, provides that "[n]o corporation shall hereafter interpose the defense of usury in any action." As a general rule, if a loan is made to a corporation, and thus not subject to usury laws, any person liable as guarantor of the corporate debt is also barred from asserting a usury defense. *Charmoll Fashions, Inc. v. Otto,* 311 Minn. 213, 216, 248 N.W.2d 717, 719 (1976). "However, where the individuals' liability for the corporate debt is direct and primary, such as that of the comaker of a note, the defense of usury may be invoked by the individual." *Id.*

In dicta the *Charmoll* court went on to state that even where a corporate note does not evidence direct personal liability, the usury law might still be applicable "if it were apparent from the record that the * * * loan was made for the individual purposes of the guarantors." 311 Minn. at 221 n. 1, 248 N.W.2d at 721 n. 1. As this limitation to the corporate loan exception has never been relied upon in Minnesota, this is an issue of first impression.

In a thorough discussion of the issue, the Mississippi Supreme Court identified two lines of authority articulating rules limiting the effect of the corporate loan exception to usury laws. *See Galloway v. The Travelers Insurance Co.,* 515 So.2d 678, 680–81 (Miss.1987). One line of authority, known as the "New Jersey Rule," holds that an individual guarantor of a corporate debt may still invoke a usury defense if the loan was actually made to the individual and the corporate entity was used to evade the usury laws by disguising the loan as one to a corporation. *Gelber v. Kugel's Tavern,* 10 N.J. 191, 89 A.2d 654 (1952). Intermediate appellate courts in at least two jurisdictions have adopted the New Jersey Rule. *See Havens v. Woodfill,* 148 Ind.App. 366, 266 N.E.2d 221 (1971); *Walnut Discount Co. v. Weiss,* 205 Pa.Super. 161, 208 A.2d 26 (1965).

The other line of authority, known as the "New York Rule," is substantially the same as the New Jersey Rule; however, to invoke the usury defense successfully, the individual guarantor must also show that the loan was "made to an individual guarantor to discharge his personal obligations, *and not in furtherance of a corporate or personal enterprise." Schneider v. Phelps*, 41 N.Y.2d 238, 242, 391 N.Y.S.2d 568, 571, 359 N.E.2d 1361, 1364 (1977) (emphasis added). The New York Rule thus distinguishes between the debtor's use of money for "personal obligations" and "corporate or personal enterprise." At least four other jurisdictions have adopted the New York Rule. *Matter of LeBlanc*, 622 F.2d 872 (5th Cir.1980) (applying Louisiana law); *Rabinowich v. Eliasberg*, 159 Md. 655, 152 A. 437 (1930); *Galloway*, 515 So. 2d 678 (Miss.1987); *Republicbank Dallas, N.A. v. Shook*, 653 S.W.2d 278 (Tex.1983). In addition, at least two more jurisdictions have to some extent codified the New York Rule. *See* Ill.Rev.Stat. ch. 17, § 6404(1)(c) (1986); Mich.Comp.Laws Ann. § 438.61 (West Supp.1988).

■ We find the New York Rule to be the sounder of the two. Usury laws are designed to protect the weak and necessitous from being taken advantage of by a lender who can unilaterally establish the terms of loan transactions. *See Utterberg v. Cameron*, 282 N.W.2d 536, 537 (Minn. 1979). The denial to corporations of the usury defense is premised on the assumed equal bargaining power between corporations and lenders. Note *Usury Defense Unavailable to Guarantors of Corporate Loans*, 4 Wm. Mitchell L.Rev. 227, 230 (1978). Further, the corporate loan exception serves to promote commercial interests and to allow for high-risk corporate loans for new ventures which would not be made at the low interest rates mandated by usury statutes. *See id.* at 231. The thrust of the corporate loan exception, therefore, is that entities involved in commercial ventures need not receive the same protection as financially unsophisticated consumers

obtaining loans for personal, non-business purposes. By so distinguishing between personal guarantors who use funds for purely personal purposes and those who seek to further a business enterprise, the New York Rule provides a sound basis for deciding when to limit application of the corporate loan exception.

In applying the New York Rule, the first question here is whether the corporate form was used to conceal a usurious loan going directly to Clifton Nelson. *See Schneider*, 41 N.Y.2d at 241–42, 391 N.Y.S. 2d at 570, 359 N.E.2d at 1364. If the corporate form was employed as a sham, the second question is whether the loan was used for Clifton's personal obligations or to further one of his business enterprises. *Id.* at 242, 391 N.Y.S.2d at 571, 359 N.E.2d at 1364. These are both determinations of fact, *id.* at 241, 391 N.Y.S.2d at 571, 359 N.E.2d at 1364, which will not be set aside unless clearly erroneous. Minn. R.Civ.P. 52.01.

■ We find the evidence readily supports the trial court's finding that the corporate form was a sham employed solely to conceal a loan intended to go to Clifton and not to the corporation. All loan proceeds were paid directly to Clifton; the corporation had no assets and conducted no other business; Clifton used the funds for non-corporate matters; and he repaid the loan with his own and Lauretta's funds.

■ The trial court did not make a finding distinguishing whether the loan was used for Clifton's personal, rather than business purposes. Indeed, the trial court could not have made such a finding because no evidence was offered on this distinction. When asked for what purpose he obtained the loan, Clifton answered, "my wife and myself." Q: "Personally?" A. "Yes."

In the context of the surrounding testimony, it is clear that "personally" meant the funds were used by the Nelsons in their individual capacities and not deposited into a corporate account. It is not clear,

however, whether "personally" meant for the Nelsons' personal needs, such as household or consumer expenses, or their various business enterprises operated as sole proprietorships (i.e. in their personal as opposed to corporate capacities). Consequently, we cannot conclude whether or not the corporate loan exception should be applied because there are insufficient facts to establish how the loan proceeds were applied.

The trial court's judgment, therefore, cannot stand and the matter must be remanded for further findings. On remand, in accordance with the debtor's burden of establishing all elements of a usury defense, the Nelsons have the burden of proof in establishing that the loan proceeds were used for personal purposes unrelated to their business enterprises. *See Fred G.*

*Clark Co. v. E.C. Warner Co.*, 188 Minn. 277, 288, 247 N.W. 225, 229 (1933).

## DECISION

The trial court's judgment is reversed and this matter is remanded for additional findings in accordance with this opinion.

Reversed and remanded.