A89A1719. CONSOLIDATED EQUITIES CORPORATION et al. v. BIRD et al.

(392 SE2d 276)

CARLEY, Chief Judge.

Appellee-plaintiffs are two of the five individuals who, as limited partners, joined with appellant-defendant Consolidated Equities Corporation, as the general partner, in forming the Master Host Inn-East Limited Partnership (Partnership). The relevant facts concerning the formation of the Partnership in 1976 are as follows: Appellant conveyed to the limited partners an undivided one-half interest in the motel and the limited partners then conveyed their interest in the motel to the Partnership. In consideration for appellant's conveyance to them, the limited partners paid appellant $75,000 in cash and also gave promissory notes payable to appellant. These notes, which specifically exculpated the makers from personal liability, were in the face amount of $225,000 and provided for a 5 percent interest rate. The notes also provided that the debts evidenced thereby would be payable from certain Partnership cash flow and residual distributions which were to be made to the limited partners and that any unpaid principal would be due on March 2, 1983. The notes were also expressly made subject to Article V (a) of the Partnership agreement. Under this provision of the Partnership agreement, if any principal remained unpaid as of March 2, 1983, then the limited partners' interest in the Partnership and their percentage of partnership distributions would be *automatically reduced* by the fraction of the amount of the principal which then remained unpaid and "[a]ny reduction in the percentage of partnership interests or percentage of distribution of any limited partner shall be offset by an increase in the percentage of partnership interests or percentage of distribution of the general partner. *Unless earlier satisfied*, all cash flow notes *shall* on March 2, 1983, *be deemed satisfied* by the operation of this Paragraph 5 (a) 1." (Emphasis supplied.) As of March 2, 1983, the Partnership payments to the limited partners had not been sufficient to pay off any of the $225,000 principal whatsoever. However, the Partnership did thereafter continue to make payments to the limited partners and these payments were applied against the notes. In 1986, after appellant notified the limited partners of a pending sale of the motel, it discovered that Article V (a) of the Partnership agreement had been overlooked. Appellant then informed the limited partners that, pursuant to the provisions of Article V (a), their interests in the Partnership had been automatically reduced to zero when, on March 2, 1983, the entirety of the principal remained unpaid. The Partnership property was sold, and the limited partners did not receive any share of profits from the sale which they would otherwise have been entitled to receive had their Partnership interests not been reduced to

zero pursuant to appellant's invocation of Article V (a) of the agreement.

Appellees brought this suit, seeking to recover a share of the sale proceeds. The trial court granted appellees' motion for partial summary judgment and denied appellants' cross-motion for summary judgment, finding that Article V (a) "is a security agreement to which the Georgia Commercial Code applies and is void as being in violation of Article 9 thereof." It is from this order that appellants bring this appeal.

1. With certain exceptions not applicable here, Article 9 of the Uniform Commercial Code applies to "any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, or accounts. . . ." OCGA § 11-9-102 (1) (a). See also OCGA § 11-9-105 (1). Appellees urge that Article 9 applies to their transaction with appellant because it was intended that their Partnership interests serve as security for the payment of the notes given by them as part payment for the motel. They further urge that, insofar as Article V (a) of the Partnership agreement purports to evidence their pre-default waiver of reasonable notice from appellee regarding the sale, other intended disposition, or proposed retention of their Partnership interests, that provision is void as violative of OCGA §§ 11-9-504 (3) and 11-9-505 (2).

" 'Security interest' means an interest in personal property or fixtures which *secures payment* or performance of an obligation." (Emphasis supplied.) OCGA § 11-1-201 (37). Article V (a) of the Partnership agreement in no way evidences an attempt to *secure* appellees' payment of the notes. To the contrary, it purports merely to provide for a form of *alternative payment* should any principal remain unpaid as of March 2, 1983. Under the provisions of Article V (a), there could be no "default" on payment of the notes. In the event that principal remained unpaid on March 2, 1983, the automatic transfer of a proportional share of the limited partners' Partnership interests effectuated an immediate satisfaction of the notes. Parties to a contract are free to agree to alternate methods of payment. See *Smith v. Pope*, 100 Ga. App. 369, 370 (5) (111 SE2d 155) (1959).

An agreement for an alternative form of payment does not allow for an indirect evasion by the creditor of the debtor protection provisions of Article 9. Since it is agreed that the alternate payment will serve to satisfy the debt in full, the debtor will not be liable for any deficiency and it is the creditor who will bear the commercial risk that he will not be made whole by the alternative form of payment. Thus, the debtor protection provisions of Article 9 are not indirectly evaded. They are simply inapplicable and irrelevant because the creditor forgoes his status and rights as a secured party and the debtor, in

turn, forgoes his entitlement to invoke the provisions of Article 9 intended to protect a defaulting debtor. The alternative form of payment in the present case did ultimately redound to appellant's financial benefit because the Partnership property was sold at a profit. If the Partnership had failed, however, it is appellees who would have benefited from the alternative form of payment. Appellant would then be holding 100 percent of the failed Partnership with no right of recourse against appellees because the indebtednesses evidenced by the notes would have been satisfied. Under such circumstances, it is appellees who would undoubtedly be urging that Article V (a) is a provision authorizing an alternate form of payment of their indebtedness rather than mere security therefore. Article V (a) cannot be construed to mean one thing if the Partnership proved successful and another if it had failed.

It follows that Article V (a) is a provision authorizing the absolute transfer of appellees' Partnership rights as an alternative form of payment of their debts, rather than one which creates a security interest in their Partnership rights as collateral for their debts. See 1 Anderson, Uniform Commercial Code § 1-201:211, p. 294 (3d ed. 1981). "The [automatic] transfer was in payment of . . . that debt. From the moment of [transfer, appellees] had neither title to nor interest in the [Partnership beyond the amount of their initial cash contribution. Appellees] could not reclaim [such interest] by payment of the extinguished indebtedness. Conversely, if a sale . . . brought less than the [amount] of the debt extinguished by the transfer, [appellant] could not look to [appellees] for the balance. The [transfer] terminated [appellees'] interest in the [Partnership] and [appellant's] interest in . . . the debt[,] which it had agreed to forbear from enforcing. Thus, it is clear that [appellant's] interest in [appellees' Partnership interests] was not to secure 'payment or performance of an obligation.' " *Art-Camera-Pix v. Cinecom Corp.*, 315 NYS2d 991, 993 (3) (1970).

2. Appellees urge that genuine issues of material fact remain as to two additional theories of recovery.

Appellees first contend that the evidence would authorize a finding that there was a mutual departure from the terms of the contract. The evidence does show that, after March 2, 1983, Partnership distributions continued to be paid to appellees and to be applied against the notes. However, ostensible application of those Partnership distributions as payments on the debts can no more serve to nullify a previous automatic transfer of Partnership interests as full payment of the debts than acceptance of later installment payments can serve to nullify a previous acceleration of a debt. See *Adamson v. Trust Co. Bank*, 155 Ga. App. 646, 648 (271 SE2d 899) (1980). Moreover, it is undisputed that any failure to have invoked Article V (a) when it

took effect on March 2, 1983, was the result of oversight. " ' "While a distinct stipulation in a contract may be waived by the conduct of the parties, it must appear that it was the intention of the parties to treat such stipulations as no longer binding. The mere fact that one party so intended would not bring about this result. It must appear that it was the mutual intention; that is, the circumstances must be such as, in law, to make practically a new agreement as to the stipulations in the original contract." ' [Cit.]" *Prudential Ins. Co. of America v. Nessmith*, 174 Ga. App. 39 (329 SE2d 249) (1985). See also *Eaves v. J. C. Bradford & Co.*, 173 Ga. App. 470 (326 SE2d 830) (1985).

It is also urged that, in violation of OCGA § 23-2-59, appellant breached its fiduciary duty by acquiring rights in the Partnership which were antagonistic to appellees' rights therein. However, appellees' Partnership rights were actually acquired by appellant with the agreement of all partners. As a result of the terms of an agreement reached in 1976 at the very outset of the formation of the Partnership and in which all partners concurred, appellees' Partnership interests were automatically transferred to appellant seven years later. OCGA § 23-2-59, when construed in conjunction with OCGA § 14-8-21, applies only to partnership rights acquired by one partner without the consent of the other partners.

3. No genuine issue of material fact remains as to appellant's liability to appellees under any theory of recovery. It follows that the trial court erred in granting appellees' motion for partial summary judgment and in denying appellants' cross-motion for summary judgment.

*Judgment reversed. McMurray, P. J., and Beasley, J., concur.*

DECIDED MARCH 6, 1990 —
REHEARING DENIED MARCH 22, 1990 — 

*Gambrell, Clarke, Anderson & Stolz, David H. Gambrell,* for appellants.

*Troutman, Sanders, Lockerman & Ashmore, William N. Withrow, Jr., Roger S. Reigner, Jr.,* for appellees.