James A. TRAPP, Appellant,

v.

Lowell L. HANCUH, et al., Respondents.

No. C0–94–2373.

Court of Appeals of Minnesota.

May 2, 1995.

---

Kevin M. Busch, Moss & Barnett, Minneapolis, for appellant.

Gary F. Albrecht, Christoffel, Elliott & Albrecht, St. Paul, for respondents.

Considered and Decided by DAVIES, P.J., RANDALL and KLAPHAKE, JJ.

## OPINION

RANDALL, Judge.

James Trapp sued AAA Wholesale Trucks and Lowell Hancuh, asserting usury on the loan and asserting that AAA Wholesale Trucks failed to comply with Uniform Commercial Code provisions on foreclosure. The parties filed cross motions for summary judgment. After a hearing, the district court granted summary judgment for AAA Wholesale Trucks and Hancuh. Trapp appeals.

## FACTS

On October 1, 1989, James Trapp obtained a loan from AAA Wholesale Trucks, Inc. (AAA). He signed the loan agreement in his individual capacity. Lowell Hancuh was the sole shareholder of AAA. Trapp promised to pay AAA $57,500 plus interest at a rate of 15% per year based on a 360–day year. The loan was due on April 1, 1990. Trapp gave his interest in the general partnership LAW Properties (the partnership), as collateral for the loan. Trapp, Hancuh, and another were the general partners of LAW Properties. LAW Properties owned property called the Maplewood Auto Mall. The loan proceeds were deposited into a corporate bank account of Metro Truck Plaza, Inc., a corporation in which Trapp was a principal. Interest payments were made on the loan for five months by checks issued by Metro Truck Plaza.

On March 26, 1990, AAA sent Trapp a letter telling him that the loan was due April 1, 1990. AAA considered Trapp's interest in the partnership to be automatically forfeited thirty-one days after Trapp failed to pay the loan when it came due on April 1. AAA retained Trapp's partnership interest, but did not seek to obtain a statement from Trapp renouncing his interest. AAA did not send written notice of foreclosure, written notice of Trapp's right to redeem, or written notice of its intent to retain Trapp's partnership interest.

On July 20, 1990, Trapp sent a letter to AAA stating that he would be able to repay the loan with interest, and that he did not intend to forfeit his interest in the partnership. On July 30, 1990, AAA responded that Trapp had automatically forfeited his interest in the partnership. AAA retained Trapp's partnership interest. The partnership transferred title to the auto mall to Hancuh, and the partnership was then dissolved.

Trapp sued AAA and Hancuh, asserting the loan was usurious and that AAA and Hancuh failed to comply with the Uniform Commercial Code (U.C.C.) notice requirements for forfeiture. The parties filed cross-motions for summary judgment, and the district court granted summary judgment in favor of AAA and Hancuh. The district court concluded that the loan was not usurious because it was made for the benefit of a corporation, and because Trapp was really only a guarantor, even though Trapp signed the loan in his individual capacity. The district court also concluded that the loan was not within the scope of the U.C.C., because it simply provided for an alternative form of payment. Trapp appeals.

## ISSUES

1. Did the district court err concluding that the loan was not usurious?

2. Did the district court err concluding that the secured party did not violate U.C.C. notice requirements for forfeiture?

## ANALYSIS

On an appeal from a grant of summary judgment, this court will determine whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *See State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). This court is not bound by the district court's decisions on legal issues. *Frost–Benco Elec. Ass'n. v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

## I.

*Availability of Usury Law*

■ The district court found that Trapp was only a guarantor of a loan for the benefit of a corporation, and as such could not assert the usury law. A corporation may not assert usury as a defense. Minn.Stat. § 334.021 (1988). The usury laws are intended to protect the weak and necessitous from being taken advantage of by lenders who can unilaterally establish the terms of the loan transaction. *Jones v. Nelson,* 432 N.W.2d 792, 796 (Minn.App.1988) (citing *Utterberg v. Cameron,* 282 N.W.2d 536, 537 (Minn.1979)). Corporations are presumed to have an equal bargaining position with lenders. *See id.*

■ Minn.Stat. § 334.021 applies to corporations and other associations with "powers and privileges of corporations *not possessed by an individual or a partnership.*" Minn. Stat. § 334.021 (emphasis added). Because the statute only applies to corporations or associations with powers of corporations, it does not apply to Trapp individually.

■ The terms of the loan here unambiguously state that Trapp, in his individual capacity, borrowed money from AAA. The note states:

I, James A. Trapp, promise to pay to the lender, at the lender's address, the principal sum of FIFTY SEVEN THOUSAND FIVE HUNDRED DOLLARS ($57,-500.00) on or before April 1, 1990.

Trapp signed the loan in his individual capacity. There is no indication on the face of the loan agreement that Trapp entered the loan as a representative of a corporation, or that the loan was made for the benefit of a corporation.

AAA and Hancuh argued, and the district court held, that Trapp, although "technically" directly liable for the loan, was in essence a guarantor for corporate debt. We disagree. We conclude that not only was Trapp "technically" directly liable for the loan, Trapp was *actually* directly liable for the loan. Thus the usury defense is not barred.

■ Generally, if a loan is made to a corporation, an individual who is liable as a guarantor of the corporate debt is also barred from asserting a usury defense. *Charmoll Fashions, Inc. v. Otto,* 311 Minn. 213, 216, 248 N.W.2d 717, 719 (1976). If the principal obligation is not usurious, the guarantor's obligation to assure performance of the principal obligation is not affected. *Dahmes v. Industrial Credit Co.,* 261 Minn. 26, 31, 110 N.W.2d 484, 489 (1961).

■ Under the "New York Rule," which has been adopted in Minnesota, an individual guarantor of a corporate debt may assert usury, but only if the guarantor can show that the loan was made to discharge personal obligations and was not made in furtherance of a business enterprise. *Jones,* 432 N.W.2d at 796. In applying the New York Rule, the court must examine whether

the corporate form was used to conceal a usurious loan going directly to [an individual]. If the corporate form was employed as a sham, the second question is whether the loan was used for [the individual's] personal obligations or to further one of [the individual's] business enterprises.

*Id.* (citations omitted).

■ However, where the individual's liability is direct and primary, the rule regarding guarantors, and the New York Rule, are not applicable. The individual with direct and primary liability may assert usury. *Charmoll Fashions,* 311 Minn. at 216, 248 N.W.2d at 719.

Because Trapp is directly liable for the loan, Trapp can assert usury under *Charmoll*

*Fashions.* If Trapp were to argue that he should not have personal liability for the loan because he signed the loan "as a representative," he would be unsuccessful. AAA and Hancuh would be able to collect from Trapp. *See William Lindeke Land Co. v. Levy,* 76 Minn. 364, 366, 79 N.W. 314, 315 (1899) (stating person with direct contractual liability could not be relieved of liability under an argument that the person undertook the loan as a representative). Likewise, AAA and Hancuh cannot successfully argue that even though Trapp is directly liable on the loan he is "really" only a guarantor. *See Charmoll Fashions,* 311 Minn. at 217, 248 N.W.2d at 719 (stating that the debtor is not a party to the guaranty, and that the guarantor is not a party to the principal obligation).

We need not analyze the guarantor rule and the New York Rule. Trapp signed the loan in his individual capacity.

The district court erred in concluding that the loan was for the benefit of a corporation, that Trapp was really only a guarantor, and that Trapp thus could not assert usury law.

*Usury Law*

■ Usury law may be used as a defense against creditor action where the underlying debt is usurious. *Strickland v. First State Bank,* 162 Minn. 235, 239, 202 N.W. 727, 729 (1925). Usury law has been utilized by aggrieved debtors as a direct cause of action as well. *See, e.g., Rathbun v. W.T. Grant Co.,* 300 Minn. 223, 227–28, 219 N.W.2d 641, 645 (1974); *Wetsel v. Guaranteed Mortgage Co.,* 195 Minn. 509, 509, 263 N.W. 605, 605 (1935); *Gould v. St. Anthony Falls Bank,* 98 Minn. 420, 420, 108 N.W. 951, 952 (1906). Here AAA did not initiate a foreclosure action in the courts, and Trapp sued AAA to avoid the loan.

■ The four elements that must be proven to establish a violation of the usury laws are

(1) a loan of money or forbearance of debt,

(2) an agreement between the parties that the principal shall be repayable absolutely,

(3) the exaction of a greater amount of interest or profit than is allowed by law, and

(4) the presence of an intention to evade the law at the inception of the transaction.

*Citizen's Nat'l Bank v. Taylor,* 368 N.W.2d 913, 918 (Minn.1985); *Rathbun,* 300 Minn. at 230, 219 N.W.2d at 646. If any element is absent, the transaction is not usurious. *Rathbun,* 300 Minn. at 230, 219 N.W.2d at 647. AAA loaned money to Trapp and the loan required him to repay the principal absolutely. The first two elements are met.

■ As to the third element, Minn.Stat. § 334.011, subd. 1 (1988) provides for the maximum rate of interest for business loans under $100,000 as a rate not in excess of 4½% over the discount rate on 90 day commercial paper in effect at the Federal Reserve Bank in the Federal Reserve district that includes Minnesota. The parties agree that the maximum legal rate of interest under the statute at the time of the loan was 11½%. The interest rate on the loan was 15%. The third element is met.

■ The final element, intent to evade the law at the inception of the transaction, requires analysis. Intent for the purposes of usury law

consists in the intent to take or receive more for the forbearance of money than the law permits, and this is true whether or not the taker knows he is violating the usury law.

*Citizen's Nat'l Bank,* 368 N.W.2d at 919 (quoting *Cemstone Prods. v. Gersbach,* 187 Minn. 416, 419, 245 N.W. 624, 625 (1932)). If a lender intends to charge an interest rate that is greater than the legal rate, the intent element is presumed met. *Id.; Rathbun,* 300 Minn. at 236, 219 N.W.2d at 650. Here, AAA intended to charge Trapp the 15% rate. We conclude the final element of usury is met.

■ We note that if a transaction is entered in good faith, with no purpose to evade the usury law, it may still be upheld even though the rate charged was greater than the legal rate. *Gould,* 98 Minn. at 421, 108 N.W. at 952; *Washington Fed. Sav. & Loan Ass'n v. Baker,* 374 N.W.2d 786, 788 (Minn.

App.1985), *pet. for rev. denied* (Minn. Dec. 13, 1985).

However, a finding of good faith is limited to situations where the lender has taken reasonable precautionary actions prior to the making of the loan in order to comply with the usury law. *See, e.g., Wetsel,* 195 Minn. at 511–12, 263 N.W. at 606 (holding that mortgage company acted with good faith in relying on schedules from certified public accountants and advice from reputable counsel); *Washington,* 374 N.W.2d at 788 (holding bank had good faith belief that it met the requirements of a HUD insured loan). AAA and Hancuh did not take any action to comply with the usury law. The good faith defense is not available to them.

*Usury Remedy*

■ Having decided the loan was usurious, we next determine Trapp's usury remedy. Where a creditor extends a usurious business or agricultural loan for less than $100,000, the debtor's exclusive usury remedy is under Minn.Stat. § 334.011, subd. 2 (1988). That section provides:

> If a greater rate of interest than that permitted by subdivision 1 is charged[,] then the entire interest due on that note, bill or other evidence of debt is forfeited. If the greater rate of interest has been paid, the person who paid it may recover in a civil action an amount equal to twice the amount of interest paid.

*Id.* Thus, the entire interest due on the loan is forfeited. In addition, Trapp may recover twice the amount of interest he actually paid. However, Trapp remains obligated to repay the principal portion of the debt. *Citizen's Nat'l Bank,* 368 N.W.2d at 920; *St. Paul Bank v. Ohman,* 402 N.W.2d 235, 239 (Minn. App.1987).

■ In a recent decision, the bankruptcy court for the district of Minnesota stated that the usury remedy provided by 334.011, subdivision 2 was cumulative with other usury remedies, not exclusive. *In re Sunde,* 149 B.R. 552, 560 (Bankr.D.Minn.1992). Under the bankruptcy court's analysis, the business

or agricultural debtor could avoid the principal debt, in addition to avoiding interest on the debt and recovering twice the interest actually paid. *See id.; see also* Minn.Stat. § 334.03 (1988) (providing for avoidance of usurious bonds, bills, notes, mortgages, and all other contracts and securities).

However, precedent for this state indicates that the usury remedy provided by Minn. Stat. § 334.011, subd. 2 for business and agricultural loans under $100,000 is exclusive, and is not cumulative with other usury remedies. *See Citizen's Nat'l Bank,* 368 N.W.2d at 920; *St. Paul Bank,* 402 N.W.2d at 239.

■ We remand this case to the district court to determine the amount of Trapp's usury remedy under Minn.Stat. § 334.011, subd. 2. In doing the calculations, the trial court should assume the following: AAA must forfeit all interest on the loan.[1] AAA must then pay Trapp twice the amount of interest Trapp has actually paid to date. Trapp remains obligated to repay the remaining principal portion of the original loan. Because 334.011, subdivision 1 provides the exclusive remedy in this situation, the loan principal is not avoided.

## II.

*Applicability of the U.C.C.*

■ We must next determine whether the U.C.C. applies to the foreclosure, and if so, whether AAA complied with its notice requirements in foreclosing on the loan.

The district court concluded that the U.C.C. did not apply. Article 9 of the U.C.C. applies

> to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper or accounts.

Minn.Stat. § 336.9–102(1)(a) (1988). The agreement here falls within the scope of article 9 because it creates a security interest in Trapp's partnership interest.

---

1. Trapp treats AAA Wholesale Trucks and Hancuh as the same, under a theory that the courts should pierce the corporate veil. Whether it would be appropriate to pierce the corporate veil is not before this court.

A security agreement is an agreement which creates or provides for a security interest. Minn.Stat. § 336.9–105(1)(*l*) (1988). A security interest is "an interest in personal property * * * which secures payment or performance of an obligation" Minn.Stat. § 336.1–201(37) (1988). The agreement provides:

> The borrower, James A. Trapp, agrees and acknowledges that the collateral for security of this note is his entire interest in LAW Properties or thirty three and one third per cent (33⅓%) of the Partnership.

The agreement provides for a security interest in the debtor's interest in the partnership and is therefore a security agreement under the U.C.C.

■ A partnership interest is personal property (specifically a general intangible) that may be used as collateral in a security agreement. Collateral is "property subject to a security interest." Minn.Stat. § 336.9–105(1)(c) (1988). General intangibles are "any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments and money." Minn.Stat. § 336.9–106 (1988). A general partner's interest in the partnership is a general intangible. *In re Witherell Corp.,* 144 B.R. 64, 65 (Bankr.E.D.Mich.1992); *In re Hartman,* 102 B.R. 90, 94 (Bankr.N.D.Tex. 1989); *In re Ellingsen MacLean Oil Co.,* 98 B.R. 284, 292 (Bankr.W.D.Mich.1989).

■ Trapp's partnership interest is a general intangible. General intangibles are personal property that may be used as collateral in a security agreement. The agreement here provides for a security interest in Trapp's partnership interest. It is a security agreement covered by Minnesota's version of the U.C.C. The district court's conclusion that Article 9 of the U.C.C. does not apply is incorrect.

■ Further, the district court's conclusion that the security agreement provided for "an alternative form of payment" is not supported by the agreement's language. The security agreement provides that Trapp's partnership interest is "collateral for security of this note." It does not state that in the event there is a dispute or breach, that Trapp's partnership interest would be an "alternative" form of payment. *Consolidated Equities Corp. v. Bird,* 195 Ga.App. 45, 392 S.E.2d 276 (1990), *cert. denied* (Ga. May 9, 1990) is not applicable here. The agreement in *Consolidated* spoke in terms of the limited partners' interests being "automatically reduced" by any unpaid balance on a certain date. *Id.* 392 S.E.2d at 278. Even if we accept for the sake of argument that such language creates an alternative form of payment, the agreement here speaks unambiguously in terms of "security" and "collateral." We conclude the agreement creates a security interest in Trapp's partnership interest, not an alternative form of payment.

If we accepted the argument of AAA and Hancuh that Trapp's partnership interest was an alternative form of payment, and not a security interest, every secured transaction in this state would cease to exist. Under their overbroad theory, every security interest would become an alternative form of payment.

*Notice Requirements Under Article 9*

■ Next, because the district court concluded the transaction was not governed by the U.C.C., the court never addressed whether AAA's disposition of the collateral complied with U.C.C. notice requirements. AAA considered Trapp to have automatically forfeited his partnership interest. AAA retained Trapp's partnership interest, and eventually sold the partnership and liquidated its assets.

Under Minn.Stat. § 336.9–505(2) (1988), a secured party in possession after a default may "propose to retain the collateral in satisfaction of the obligation." The secured party must send written notice of its intention to retain the collateral unless after default the debtor has signed a statement renouncing the debtor's rights. *Id.* If the debtor objects to this form of disposition within 21 days, the secured party must dispose of the collateral under Minn.Stat. § 336.9–504 (1988).

Under section 336.9–504, the secured party may "sell, lease, or otherwise dispose of any or all of the collateral." Minn.Stat. § 336.9–504(1). In disposing of the collateral under

section 336.9–504, "every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable." Minn.Stat. § 336.9–504(3). If the secured party fails to comply with section 336.9–504, the secured party incurs the liabilities set out in section 336.9–507 (1988).

The debtor also has the right to redeem the collateral by paying the amount of the underlying debt before the secured party disposes of collateral under section 336.9–504, or before obligation has been discharged under section 336.9–505(2). Minn.Stat. § 336.9–506 (1988).

Trapp argues that AAA failed to comply with the requirements of sections 336.9–505(2) and 336.9–504. We agree. Trapp is correct that the letter from AAA dated March 26, 1990, that stated the loan was due April 1, is not sufficient notice of the secured party's intent to retain the collateral in satisfaction of the obligation. It does not state that AAA intended to retain the collateral, and more importantly, the statute requires written notice after default. Minn.Stat. § 336.9–505(2).

The letter from AAA dated July 20, 1990, stating that Trapp had forfeited his partnership interest, could arguably have provided sufficient notice. As Trapp correctly argues, though, he objected to AAA retaining his partnership interest before AAA sent him this letter.

Because Trapp objected to AAA retaining the collateral, AAA was obligated to dispose of the collateral pursuant to section 336.9–504. It failed to comply. Section 336.9–504(3) requires that

reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if the debtor has not signed after default a statement renouncing or modifying the right to notification of sale.

Notice is reasonable under this section if it is "sent in sufficient time to enable those entitled to notice to take appropriate steps to protect their interest in the collateral." *Ford Motor Credit Co. v. Hertzberg,* 511 N.W.2d

25, 26 (Minn.App.1994), *pet. for rev. denied* (Minn. Mar. 31, 1994) (*quoting Chemlease Worldwide, Inc. v. Brace, Inc.,* 338 N.W.2d 428, 434 (Minn.1983)).

AAA did not give Trapp notice of the sale. Trapp did not sign a statement renouncing or modifying his right to notification after default. Thus, the record establishes that AAA violated this section. Because AAA did not comply with section 336.9–504, its disposition of the partnership interest was commercially unreasonable as a matter of law.

*U.C.C. Remedy*

If a secured party fails to comply with sections 336.9–505(2) and 336.9–504(3), the secured party is liable to any person entitled to notification for any loss caused by the secured party's failure to comply with the notice provisions. Minn.Stat. § 336.9–507; *Chemlease Worldwide,* 338 N.W.2d at 436.

The partnership is dissolved. We conclude the only available remedy left Trapp is to be paid the value of his partnership interest. AAA is liable to Trapp for the value of his interest in the partnership at the time it began foreclosure proceedings against his partnership interest.

Trapp argues that at the time of the foreclosure, the partnership was worth $450,000, and thus his interest was worth $150,000. AAA and Hancuh estimate Trapp's interest as being worth substantially less than this amount. Because the value of Trapp's partnership interest is not established in the record, we remand to the district court for specific findings on the value of the partnership at the time AAA began foreclosure proceedings on Trapp's partnership interest. Further, Trapp is entitled to any partnership distribution attributable to his interest.

**DECISION**

The district court erred in concluding that Trapp could not assert usury law. The loan was usurious, and Trapp is entitled to the exclusive usury remedy under Minn.Stat. § 334.011, subd. 2 (1988).

The district court erred in concluding that Article 9 of the U.C.C. did not apply to this transaction. AAA Wholesale Trucks failed to comply with the U.C.C. notice requirements. Its disposition of Trapp's partnership interest was commercially unreasonable. Trapp is entitled to the value of his interest in the partnership together with his share of partnership distributions.

The case is remanded to the district court to determine the amount of Trapp's usury remedy under section 334.011, subd. 2. The court should make findings on the value of Trapp's partnership interest at the time of foreclosure.

Trapp is still obligated to pay respondents the unpaid principal portion of the loan.

**Reversed and remanded.**