949 So.2d 1050 (2006)
Larry HOPFENSPIRGER, Appellant/Cross Appellee,
v.
Perry WEST and Cambridge Energy Corporation, Appellee/Cross Appellant.
No. 5D05-3991.
District Court of Appeal of Florida, Fifth District.
December 15, 2006.
Rehearing Denied January 24, 2007.
*1052 Clifford A. Wolff of The Wolff Law Firm, Ft. Lauderdale, for Appellant/Cross Appellee.
Perry Douglas West, Cocoa, for Appellees/Cross Appellants Cambridge Energy Corporation and Perry West.
EVANDER, J.
Pursuant to a written loan agreement, Larry Hopfenspirger lent Cambridge Energy Corporation (Cambridge) $300,000. The loan was personally guaranteed, up to $150,000, by Cambridge's chief executive officer, Perry West. After Cambridge defaulted on the loan, Hopfenspirger brought an action against Cambridge and West. The case was tried without a jury. The trial court entered a final judgment against Cambridge but not against West. The trial court provided no rationale for its decision to find only Cambridge liable. We reverse.
The facts in this case are relatively undisputed. Hopfenspirger, a commercial investor and resident of the state of Minnesota, and Cambridge, a Nevada-based company with its principal office in Florida, entered into a written loan agreement. Pursuant to the terms of the agreement, Hopfenspirger agreed to make a $300,000, six-month loan to Cambridge. The loan agreement was signed by West on behalf of Cambridge.
As collateral for the loan, Hopfenspirger received a third mortgage on real property located in Louisiana, a personal guarantee of up to $150,000 from West, and a secured interest in 200,000 shares of Cambridge stock. The loan agreement provided the transaction would be governed by Minnesota law. The loan agreement, mortgage, stock-pledge documents, and personal guarantee were executed as part of a single transaction.
Cambridge defaulted on the loan. It paid no monies to Hopfenspirger. Hopfenspirger's collateral has, to date, provided little relief. Hopfenspirger did not begin foreclosure proceedings in Louisiana *1053 because he learned the property was worth approximately $350,000 and was encumbered by debts totaling approximately $365,000. The holders of the two superior mortgages eventually commenced foreclosure proceedings. Hopfenspirger received no monies from the foreclosure sale as the sale proceeds were insufficient to pay off the first and second mortgages. The pledged stock was ultimately sold by Hopfenspirger for $5,500.
At trial, West raised two defenses. We will address each defense.
First, West contends the loan violated Florida's usury law. We do not need to determine whether the loan agreement was usurious because, pursuant to Minnesota law, Cambridge and West were not permitted to raise this defense. Specifically, section 334.01(2), Minnesota Statutes, provides that a usury defense cannot be raised by a borrower where the loan amount exceeds $100,000. The guarantor of a loan in excess of $100,000 is similarly prohibited from raising a usury defense. Charmoll Fashions, Inc. v. Otto, 311 Minn. 213, 248 N.W.2d 717 (1976); Trapp v. Hancuh, 530 N.W.2d 879 (Minn.Ct.App. 1995). Although the personal guarantee agreement did not include a choice of law provision, Minnesota law would still govern. Florida law is well-settled that where two or more documents are executed by the same parties at or near the same time, in the course of the same transaction, and concern the same subject matter, they will be read and construed together. Whitley v. Royal Trails Property Owners' Association, Inc., 910 So.2d 381, 383 (Fla. 5th DCA 2005). Furthermore, it is a generally accepted rule of contract law that, where a writing expressly refers to and sufficiently describes another document, the other document is to be interpreted as part of the writing. Courtesy Auto Group, Inc. v. Garcia, 778 So.2d 1000, 1002 (Fla. 5th DCA 2000).
West next argues that, as a matter of public policy, Florida should not enforce the loan agreement or the guarantee agreement if the loan was indeed usurious. This argument has previously been rejected by our supreme court. Specifically, in Continental Mortgage Investors v. Sailboat Key, Inc., 395 So.2d 507 (Fla.1981), the court stated:
We conclude that in an interstate commercial loan transaction with which several states have contacts and in which usury is implicated, Florida Courts will recognize a choice of law provision provided by the parties so long as the jurisdiction chosen in the contract has a normal relationship with the transaction.
Id. at 508. Here, Minnesota clearly had a "normal relationship with the transaction." Hopfenspirger is a resident of Minnesota, the documents were drafted in Minnesota, and the loaned monies were provided by Hopfenspirger from his office in Minnesota.
For his second defense, West alleged Hopfenspirger failed to liquidate the collateral in a commercially reasonable manner. The guarantee agreement did provide that prior to seeking recovery against West, Hopfenspirger was required to "have liquidated" the common stock pledged as security for the loan as well as the mortgage on the Louisiana property. With regard to the Louisiana property, the uncontroverted evidence was that the debts on the Louisiana property exceeded its value at the time of the default. West's contention that Hopfenspirger was nonetheless required to commence a foreclosure proceeding on the Louisiana property is without merit. The doctrine of "frustration of purpose" excuses performance by a party where the value of performance regarding the subject of an agreement has *1054 been frustrated or destroyed. Williston on Contracts, § 77.52 (2006). The doctrine is not limited to strict impossibility, but includes "impracticability" due to unreasonable expense. Id. Florida and Minnesota both acknowledge and apply this doctrine. Equitrac Corp. v. Kenny, Nachwalter & Seymour, P.A., 493 So.2d 548 (Fla. 3d DCA 1986); City of Savage v. Formanek, 459 N.W.2d 173 (Minn.Ct.App.1990). In this case, it would have been a futile act for Hopfenspirger to commence foreclosure proceedings on the Louisiana property. The futility of such a course of action is demonstrated by the fact that shortly after the loan default, foreclosure proceedings were brought by the holders of the two superior mortgages. The eventual foreclosure sale confirmed Hopfenspirger's third mortgage had no value.
The evidence also refutes West's claim that Hopfenspirger sold the pledged stock in a commercially unreasonable manner. The only evidence produced by West on this issue was that Hopfenspirger could have sold the pledged stock for more than $5,500 if the stock had been sold immediately after Cambridge's default. However, the uncontroverted evidence was that Hopfenspirger delayed selling the pledged stock for approximately four to five months based on certain representations made by Cambridge. In essence, West is suggesting that it was unreasonable per se for Hopfenspirger to rely on representations made by the company of which he was the Chief Executive Officer. We reject such an inequitable argument. We would also note the trial judge implicitly found Hopfenspirger had sold the pledged stock in a commercially reasonable manner when it entered a final judgment against Cambridge for the full amount claimed by Hopfenspirger.
On remand, final judgment is to be entered in favor of Hopfenspirger and against West in the principal amount of $144,500 plus interest, reasonable attorney's fees and court costs. The final judgment against Cambridge is to be amended so as to reflect a set off of the $5,500 received by Hopfenspirger upon the sale of the pledged stock.
REVERSED and REMANDED.
THOMPSON and LAWSON, JJ., concur.