# Third District Court of Appeal
## State of Florida

Opinion filed May 17, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-1273
Lower Tribunal No. 20-27207
_____

**Vereit Real Estate, L.P.,**
Appellant,

vs.

**Fitness International, LLC,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, William Thomas, Judge.

Ballard Spahr LLP, and Katherine E. Anderson (Phoenix, AZ), and Michael Schuster (Denver, CO), for appellant.

Shutts & Bowen LLP, and Daniel Nordby (Tallahassee); Shutts & Bowen LLP, and Matthew R. Chait and Sean M. Smith (West Palm Beach), for appellee.

Before SCALES, LINDSEY and GORDO, JJ.

SCALES, J.

In this case, concerning a commercial tenant's obligation to pay rent for the two-and-half month period ("closure period")[1] that executive and emergency orders ("closure orders") prevented the operation of gyms and fitness facilities in Florida due to the Covid-19 pandemic, Vereit Real Estate, L.P. ("Landlord"), the defendant/counter-plaintiff below, appeals a final summary judgment in favor of the plaintiff/counter-defendant below, Fitness International, Inc. ("Tenant"). The trial court determined that Tenant was not obligated to pay rents during the closure period pursuant to the underlying lease agreement's force majeure clause and, in the alternative, under the equitable doctrines of impossibility of performance, impracticability of performance and frustration of purpose. Because the subject force majeure clause, by its express terms, does not relieve Tenant of its rent obligations, and the equitable doctrines asserted by Tenant are similarly inapplicable, we reverse the final judgment and remand this cause back to the trial court with directions that final summary judgment be entered for Landlord.

## I.      RELEVANT FACTS AND PROCEDURAL BACKGROUND

The facts of this case are relatively simple and are not in dispute. In November 2016, Tenant entered into a fifteen-year lease agreement with Landlord's predecessor-in-interest that permits Tenant to use the leased

---

[1] Between March 20, 2020, and June 8, 2020.

premises in exchange for Tenant's payment of rent ("Lease"). The Lease contains a force majeure clause that excuses either party's obligation to perform any act required by the Lease if "restrictive laws" hamper the party's ability to perform that act:

> **22.3 FORCE MAJEURE.** *If either party is delayed or hindered in or prevented from the performance of any act required hereunder because of* strikes, lockouts, inability to procure labor or materials, failure of power, *restrictive laws*, riots, insurrection, war, acts of terrorism, fire, severe inclement weather such as snow or ice or other casualty or other reason of a similar or dissimilar nature beyond the reasonable control of the party delayed, financial inability excepted (any "<u>Force Majeure Event</u>"), *performance of such act shall be excused for the delay caused by the Force Majeure Event. Delays or failure to perform* resulting from lack of funds or *which can be cured by the payment of money shall not be Force Majeure Events.*

(Emphasis in italics added).

Tenant operates an LA Fitness health club and fitness facility on the leased premises. Tenant met its monthly rent obligation through March 2020, but decided to temporarily close the subject LA Fitness on March 17, 2020, due to the Covid-19 pandemic. Three days later, Florida Governor Ron DeSantis issued an executive order that, as of March 20, 2020, required all gyms and fitness centers in Florida to close temporarily in order to prevent the spread of Covid-19. Through subsequent governor-issued executive orders and emergency orders issued by Miami-Dade County (collectively, the closure orders), Tenant was prevented from operating the LA Fitness

3

until June 8, 2020. Tenant did not pay rent for the leased premises in April, May, or June 2020.

In December 2020, Tenant filed the instant two-count declaratory judgment action against Landlord in the Miami-Dade County Circuit Court. The first count of Tenant's operative complaint seeks a declaration that, pursuant to the Lease's force majeure clause, Tenant was excused from paying rent during the closure period because the closure orders prevented Tenant from operating the subject LA Fitness on the leased premises during that timeframe. The second count seeks a declaration that Tenant was excused from paying rent during the closure period pursuant to the equitable doctrines of impossibility of performance, impracticability of performance and frustration of purpose. Tenant's operative complaint also alleges claims for Landlord's purported breach of the Lease's force majeure clause and unjust enrichment, seeking partial reimbursement for the rent monies Tenant paid for March 2020, after the closure period commenced.

In May 2021, Landlord filed a responsive pleading and counterclaim that alleges Tenant breached the Lease by not paying rent during the closure period. Tenant's answer thereto alleges the affirmative defenses of impossibility of performance, impracticability of performance and frustration of purpose.

4

The parties filed competing motions for summary judgment on their respective pleadings. Following a hearing thereon, on June 8, 2022, the trial court entered separate summary judgment orders granting Tenant's motion and denying Landlord's motion. Specifically, the trial court determined that, pursuant to the Lease's force majeure clause, Tenant was excused from paying rent during the closure period because the closure orders prevented Tenant from operating the LA Fitness on the leased premises during that timeframe. The trial court determined further, in the alternative, that Tenant's rent obligation was excused during the closure period pursuant to the equitable doctrines of impossibility of performance, impracticability of performance and frustration of purpose. On June 30, 2022, the trial court entered final judgment in favor of Tenant, awarding Tenant damages, attorney's fees and costs totaling $88,310.82, plus interest. Landlord timely appealed this final summary judgment.

## II.   ANALYSIS[2]

### A. The Force Majeure Clause

1. Introduction

---

[2] "This Court reviews *de novo* an order granting summary judgment." <u>Garcia v. Milport Invs. Ltd.</u>, 334 So. 3d 734, 737 n.2 (Fla. 3d DCA 2022). Similarly, we review *de novo* the trial court's interpretation of the force majeure clause in the Lease. <u>See</u> <u>Rockwell at Amelia Passage, LLC v. Williams</u>, 343 So. 3d 627, 629-30 (Fla. 1st DCA 2022).

Tenant's reliance on the subject force majeure clause to excuse its obligation to pay rent is misplaced because a plain reading of either of the two sentences comprising the subject clause precludes Tenant's sought rent relief.

A force majeure clause is a contractual provision that excuses a party's non-performance when extraordinary events that are beyond that party's control prevent the party from performing under the contract. See Home Devco/Tivoli Isles LLC v. Silver, 26 So. 3d 718, 722-23 (Fla. 4th DCA 2010). "Even so, it 'is not an opt-out provision; it is limited in scope.'" Rockwell at Amelia Passage, LLC, 343 So. 3d at 630 (quoting Stein v. Paradigm Mirasol, LLC, 586 F.3d 849, 858 (11th Cir. 2009)). The plain language of the force majeure clause itself defines when, and under what circumstances, the contracting parties are excused from performing under the agreement. See KRG Oldsmar Project Co., LLC v. CWI, Inc., 48 Fla. L. Weekly D597, 2023 WL 2588634, at *3 (Fla. 2d DCA Mar. 22, 2023). "When a contract is clear and unambiguous, the court's role is to enforce the contract as written, not to rewrite the contract to make it more reasonable for one of the parties." Id. (quoting Snyder v. Fla. Prepaid Coll. Bd., 269 So. 3d 586, 592 (Fla. 1st DCA 2019)).

2. The first sentence

6

The first sentence of the subject force majeure clause provides, in relevant part, that "[i]f either party is delayed or hindered in or prevented from the performance of *any act required* hereunder because of . . . restrictive laws . . . performance of *such act* shall be excused for the delay caused by the Force Majeure Event." (Emphasis added). Hence, for Tenant to successfully assert the clause to excuse Tenant's rent obligations, Tenant had the summary judgment burden to establish that the closure orders (i.e., "restrictive laws"[3]) delayed, hindered or prevented Tenant from paying rent.

The trial court held that "[o]nce [Tenant's] right to operate a health club in the Premises – the very thing for which [Tenant] bargained in entering into the Lease – was taken away, the Rent obligation necessarily must be excused. Those obligations go hand in hand." It appears that the trial court conflated Tenant's contractual right to operate a fitness facility at the leased premises with Tenant's separate and distinct contractual requirement to pay rent. While the closure orders no doubt prevented Tenant from operating a fitness facility at the leased premises, the Lease did not *require* Tenant to operate a fitness facility at the leased premises.

---

[3] Landlord concedes that the closure orders are the type of "restrictive laws" contemplated by the subject force majeure clause.

The Lease does provide that "[t]he 'Initial Use[]' of the Building shall be for the operation of a health club and fitness facility," but it further provides that, subject to certain conditions and limitations, "Tenant may also use the Building for such other use as Tenant may determine in Tenant's reasonable business judgment." In addition, the Lease provides that "Tenant shall at all times and from time to time have the right to cease business operations from the Parcel, provided that Tenant continues to . . . pay Rent due under the Lease . . . ." Thus, while Tenant certainly has the right to operate a fitness facility on the leased premises, it is not contractually *required* to do so. Nor is Tenant even required to conduct *any* business operations on the leased premises so long as Tenant continues to pay rent to Landlord.

The Lease requires Tenant to pay rent. But the summary judgment record contains no evidence that Tenant's payment of rent during the closure period was delayed, hindered, or prevented by the closure orders. Indeed, the closure orders did not make it illegal for Tenant to pay rent, and Tenant concedes that it had the ability to pay rent during the entirety of the closure period. See Fitness Int'l, LLC v. DDRM Hill Top Plaza L.P., SACV 21-00142CJC(ADSx), 2021 WL 5456666, at *4 (C.D. Cal. Oct. 20, 2021) (interpreting a similar force majeure provision, concluding that "even if the Court were to construe the restrictive laws at issue as a force majeure event,

8

Tenant has not shown that its failure to pay rent was proximately caused by the restrictive laws, as required under the force majeure provision . . . . Indeed, Tenant concedes that it had the ability to pay the rent during the entirety of the closure periods.") (citation omitted).

We are not unsympathetic to Tenant's unassailable assertion that its ability to operate its business – a fitness center – was prevented by the closure orders. But, our inquiry is whether the Tenant's obligation to pay rent was excused by the Lease's force majeure clause; it was not. The first sentence of the force majeure clause excuses only acts *required* to be performed under the Lease, and, while it was certainly contemplated that Tenant would operate a fitness facility at the leased premises, the Lease simply did not *require* Tenant to do so. Further, Tenant concedes that the closure orders did not hinder Tenant's ability to pay rent, an obligation that was required of Tenant under the Lease. Thus, Tenant failed to meet its summary judgment burden to establish that "restrictive laws" prevented Tenant from performing an act that the Lease required.

3. <u>The second sentence</u>

Even if the closure orders did hamper Tenant's ability to pay rent to Landlord, Tenant would not be excused from paying rent pursuant to the plain language of the second sentence of the Lease's subject force majeure

9

clause. This sentence provides, in relevant part, that a party's "failure to perform . . . which can be cured by the payment of money shall not be Force Majeure Events." Put another way, the force majeure clause applies only to "Force Majeure Events" and, if a failure to perform can be cured by the payment of money, that failure to perform, by express definition, does not constitute a "Force Majeure Event."

The act that Tenant failed to perform here was the payment of rent. Consequently, because Tenant's failure to meet its rent obligation obviously could be "cured by the payment of money," such failure does not constitute a "Force Majeure Event." Based on the clause's second sentence, Tenant's obligation to pay rent was not excused by the force majeure clause. See SVAP III Poway Crossings, LLC v. Fitness Int'l, LLC, 303 Cal. Rptr. 3d 863, 872 (Cal. Ct. App. 2023) ("[T]he lease explicitly excludes from the definition of force majeure event any 'failures to perform resulting from lack of funds or which can be cured by the payment of money.' We thus conclude that the plain text of the force majeure provision precludes its application here."); Fitness Int'l, LLC, 2021 WL 5456666, at *4 ("The force majeure provision explicitly states that '[d]elays or failures to perform . . . which can be cured by the payment of money shall not be Force Majeure Events[.]' Here, Tenant's 'failure[] to perform,' i.e., its failures to pay rent, can 'be cured by

10

the payment of money' and thus cannot constitute a force majeure event.")
(citation omitted).[4]

Because we conclude that Tenant's obligation to pay rent was not
excused by the Lease's force majeure clause, we are compelled to reverse
the trial court's entry of final summary judgment on this basis. We now turn
to the alternate bases cited by the trial court for entering judgment for Tenant:
the equitable doctrines.

B. *The Equitable Doctrines of Impossibility of Performance,
Impracticability of Performance and Frustration of Purpose*

The doctrines of impossibility of performance, impracticability of
performance and frustration of purpose are affirmative defenses to a breach
of contract claim. See 11 Fla. Jur. 2d Contracts § 262.[5] "Because of the

---

[4] At oral argument, Landlord's counsel conceded that the second sentence's
definitional restriction would likely preclude Tenant from ever successfully
asserting the force majeure clause as a defense to Tenant's obligation to pay
rent because a failure to pay rent can always be cured by the payment of
money. Sophisticated parties, however, negotiated the Lease, and, as stated
above, Florida's courts are powerless to rewrite an unambiguous contractual
provision to make it fairer to one party. See KRG Oldsmar Project Co., LLC,
2023 WL 2588634, at *3.

[5] Under the doctrine of impossibility of performance, "a party is discharged
from performing a contractual obligation which is impossible to perform and
the party neither assumed the risk of impossibility nor could have acted to
prevent the event rendering the performance impossible." Marathon
Sunsets, Inc. v. Coldiron, 189 So. 3d 235, 236 (Fla. 3d DCA 2016). The
closely related doctrine of impracticability of performance differs in that it
includes a party's inability to perform "due to unreasonable expense." Fla.

11

central importance placed upon the enforceability of contracts in our culture, the defense of impossibility (and its cousins, impracticability and frustration of purpose) must therefore be applied with great caution if the contingency was foreseeable at the inception of the agreement." Ferguson v. Ferguson, 54 So. 3d 553, 556 (Fla. 3d DCA 2011); Am. Aviation, Inc. v. Aero-Flight Serv., Inc., 712 So. 2d 809, 810 (Fla. 4th DCA 1998) ("The doctrine of impossibility of performance should be employed with great caution if the relevant business risk was foreseeable at the inception of the agreement and could have been the subject of an express provision of the agreement."); Genuinely Loving Childcare, LLC v. Bre Mariner Conway Crossings, LLC, 209 So. 3d 622, 625 (Fla. 5th DCA 2017) ("The common thread between these . . . affirmative defenses is foreseeability at the inception of the lease.").

Where a business risk was foreseeable at the inception of the parties' agreement, "there exists an inference that the risk was either allocated by

Laundry Servs., Inc. v. Sage Condo. Ass'n, 193 So. 3d 68, 68 (Fla. 3d DCA 2016) (quoting Hopfenspirger v. West, 949 So. 2d 1050, 1054 (Fla. 5th DCA 2006)). "In contrast, frustration of purpose arises when one of the parties finds that the purposes for which he or she bargained, and which purposes were known to the other party, have been frustrated because of the failure of consideration or impossibility of performance by the other party." 11 Fla. Jur. 2d Contracts § 262.

12

the contract or was assumed by the party." <u>Genuinely Loving Childcare, LLC</u>, 209 So. 3d at 625. While the foreseeability of a business risk's occurrence in the context of contractual defenses is generally an issue of fact, summary judgment may be entered in a breach of contract action where the business risk was expressly addressed by the parties' agreement. <u>Id.</u> at 625-26. Put another way, if the agreement provides that a party assumes the risk that a future event may prevent the party from performing a contractual obligation, then the equitable defenses are unavailing in an action alleging the party's breach for non-performance. <u>Id.</u>; <u>Leon Cnty. v. Gluesenkamp</u>, 873 So. 2d 460, 463 (Fla. 1st DCA 2004) ("Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary." (quoting RESTATEMENT (SECOND) OF CONTRACTS § 261 (1981))); <u>see also</u> RESTATEMENT (SECOND) OF CONTRACTS § 261, cmt. a. (1981) ("The principle, like others in this Chapter,[6] yields to a contrary agreement by which a party may assume a greater as well as a lesser obligation. By such an agreement,

---

[6] RESTATEMENT (SECOND) OF CONTRACTS: CHAPTER 11. IMPRACTICABILITY OF PERFORMANCE AND FRUSTRATION OF PURPOSE.

13

for example, a party may undertake to achieve a result irrespective of supervening events that may render its achievement impossible, and if he does so his non-performance is a breach even if it is caused by such an event."); 1700 Rinehart, LLC v. Advance Am., 51 So. 3d 535, 537-38 (Fla. 5th DCA 2010) (concluding that the frustration of purpose doctrine did not apply where "the particular potential obstacle was not only foreseen by the parties, but . . . specifically bargained [for], with the risks of its occurrence divided by and between the parties in the agreement itself"); City of Miami Beach v. Championship Sports, Inc., 200 So. 2d 583, 586 (Fla. 3d DCA 1967) (concluding that the doctrines of impossibility of performance and frustration of purpose did not excuse a lessee from paying rent where the parties' lease expressly provided that the lessee was responsible for paying rent should, for any reason, the lessee fail to take possession of the premises).

As discussed above,[7] and as evidenced by the text of the Lease's force majeure clause, the parties expressly agreed that Tenant would bear the risk of having to pay rent to Landlord even if Tenant were financially harmed by the government's passage of "restrictive laws." The Covid-19 pandemic was definitely unpredictable, but, as evidenced by the force majeure clause's

---

[7] See Section II. A. *supra*.

14

express inclusion of "restrictive laws" in its text, the government's adoption of "restrictive laws" was not unpredictable. The parties agreed in the Lease that Tenant's rent obligations would not be excused even if government adopted "restrictive laws." Hence, Tenant's rent obligation cannot be excused under the equitable doctrines. See VEREIT Real Estate, LP v. Fitness Int'l, LLC, 1 CA-CV 22-0402, 2023 WL 2879976, at *6 (Ariz. Ct. App. Apr. 11, 2023) (interpreting an identical force majeure clause, concluding that "[b]ecause Tenant bears the risk of loss under the lease provisions, its performance cannot be excused under the doctrine of frustration of purpose") (citation omitted).

We, therefore, are compelled to reverse the trial court's entry of final summary judgment in favor of Tenant because the equitable doctrines of impossibility of performance, impracticability of performance and frustration of purpose are inapplicable to excuse Tenant's rent obligations in this case.

## III.   CONCLUSION

Tenant's obligation to pay rent is not excused by the Lease's force majeure clause and Tenant's equitable defenses are inapplicable to Landlord's rent claims. We, therefore, reverse the challenged final judgment and remand this cause back to the trial court with directions that final summary judgment be entered in Landlord's favor.

Reversed and remanded with instructions.